**GST TELECOMMUNICATIONS, INC., GST USA, Inc., and GST Telecom, Inc., Plaintiffs,**

**v.**

**Stephen IRWIN, David J. Adler, and Olshan Grundman Frome & Rosenzweig LLP, Defendants.**

**Nos. 98 CIV 8865 MP AJP.**

United States District Court, S.D. New York.

March 7, 2000.

Layton Brooks & Hecht, New York City, for Plaintiffs GST Telecommunications, Inc., GST USA, Inc., and GST Telecom, Inc.; Kenneth R. Puhala, of counsel.

Kramer Levin Naftalis & Frankel LLP, New York City, for Defendant Stephen Irwin; Gary Naftalis and Jonathan M. Wagner, of counsel.

Proskauer Rose Goetz, Mendelsohn LLP, New York City, for Defendants David J. Adler and Olshan Grundman, Frome & Rosenzweig LLP; Thomas C. Moore, John W. Ritchie, and Jeremy R. Feinberg of counsel.

### Opinion

MILTON POLLACK, Senior District Judge.

After having carefully reviewed the purported testimony of the proffered experts, I find that there is no perceptible reason for their expert proof in this case. It is evident that the contentious advocacy of the experts—illustrated by conclusions on the credibility of explanations regarding the business judgment of the board of directors, its officers and attorneys, in clearly expressed, biased viewpoints—do little to aid the triers of fact on the underlying transactions. There is no reason why judges should permit the experts' contentions to further basic comprehension, efficiency or fairness.

This case involves the business judgment of the Board of Directors in several telecommunication transactions. The plaintiffs' summary judgment papers reveal that they have misconstrued the substance of this case as liability of the corporate attorneys for failing to overrule the Board of Directors, whom the lawyers served, by failing to restrain the votes and directions of the Board. Plaintiffs charge this as malpractice on the part of the attorneys. The experts fall in line with the plaintiffs; they furnish assumptions and conclusions disregarding the authority and supremacy of the Board in order to opine malpractice of the attorneys. The matters involved are more properly left to the judge and the triers of fact in this case.

■ Limitations of the Rules of Evidence on expert opinion testimony are strictly enforced in the Second Circuit. *See Kidder, Peabody & Co., Inc. v. IAG International Acceptance Group N.V.*, 14 F.Supp.2d 391, 402 (S.D.N.Y.1998). This Circuit has long held that "in reviewing the use of expert testimony, we also look to see 'if it will "usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it."'" *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir.1999) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir.1994) (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991))). *See also AUSA Life Insurance Co. v. Dwyer*, 899 F.Supp. 1200, 1202–03 (S.D.N.Y.1995). Furthermore, "[e]xpert testimony is no longer an invariable necessity in establishing foreign law, and indeed, federal judges may reject even the uncontradicted conclusions of an expert witness and reach their own decisions on the basis of independent examination of foreign legal authorities." *Curtis v. Beatrice Foods Company*, 481 F.Supp. 1275, 1285 (S.D.N.Y.1980). The judge thus retains the discretion to instruct the jury regarding the relevant law.

■ Federal Rule of Evidence 702 permits expert testimony "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." The standards of conduct espoused by the experts are not specialized knowledge; rather, in effect, the "experts" are called to express their legal conclusions on ethics and business oriented transactions. In a highly volatile industry with novel and unpredictable challenges, competitive conduct, and timing factors such as those in the instant litigation, it would be inappropriate to consider the experts' personal assessments of the credibility of the situations involved, the sufficiency of the measures utilized in considering the business plans being pursued, the limits of unacceptable business risks, the evaluation of the means to deal with the business choices pre-

sented to the corporate officers and advisors, and the impact of self-interested conduct and the significance thereof.

In short, the Court should not shift to such witnesses the responsibility to give conclusory opinions and characterizations of the business conduct portrayed and to essentially decide the case. *See United States v. Scop,* 846 F.2d 135, 139 (2d Cir.1988), *rev'd in part on reh'g on other grounds,* 856 F.2d 5 (2d Cir.1988) ("Rule 704 [of the Federal Rules of Evidence] was not intended to allow experts to offer opinions embodying legal conclusions."); *see also Hygh v. Jacobs,* 961 F.2d 359, 362–64 (2d Cir.1992) (holding that the expert's testimony that the defendant "had employed 'deadly physical force' whose use was not 'warranted under the circumstances' " and that the defendant's " 'conduct in these circumstances was 'totally improper' ' " constituted conclusory condemnations, which, "in the language of the advisory committee, 'merely [told] the jury what result to reach.' ") (citing Fed.R.Evid. 704 advisory committee's Note). A fair reading and appraisal of the animated assessments of the experts suggests it would be virtually impossible for them to put aside their expressed previous judgments and render judgment simply on the corporate and professional conduct involved and its credibility and conformity with standards described by them. Testimony from an expert, predicated on "subjective belief" and "unsupported [factual] speculation" violates the Supreme Court's directions for expert testimony in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 590, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

█ It is for the trial judge, in the exercise of reasonable discretion, to determine under Rule 104(a) of the Federal Rules of Evidence whether the expert proposing to testify will assist the triers of fact to understand or determine the relevant issues. An expert need not opine legal conclusions. "When an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's. When this occurs, the expert acts outside of his limited role of providing the groundwork in the form of an opinion to enable the jury to make its own informed

determination ... [T]his Court requires the exclusion of testimony which states a legal conclusion." *United States v. Duncan,* 42 F.3d 97, 101 (2d Cir.1994). Alternatives of conduct pursued are for the jury to evaluate. The sharp dispute between the conclusions of plaintiffs' proposed experts and the opposite conclusions of defendants' proposed experts is enough to avoid asking the jury to vote on the credibility of the rival experts and their opinions and conclusions in a case such as this. Moreover, testimony of legal experts on ethics in the profession "is hardly an occasion for which credible experts supply legal opinions." *United States v. Eyerman,* 660 F.Supp. 775, 781 (S.D.N.Y.1987).