## In re: INITIAL PUBLIC OFFERING SECURITIES LITIGATION

**This Document Relates To: All Cases**

**No. 21 MC 92(SAS).**

United States District Court, S.D. New York.

Nov. 7, 2001.

See, also, 174 F. Supp.2d 70.

**62**

Melvyn I. Weiss, Esq., Ariana J. Tadler, Esq., Milberg Weiss Bershad Hynes & Lerach LLP, Stanley Bernstein, Esq., Robert Berg, Esq., Bernstein Liebhard & Lifshitz, LLP, New York, Liaison Counsel for Plaintiffs.

Gandolfo V. DiBlasi, Esq., Sullivan & Cromwell, New York, Liaison Counsel for Defendants (Underwriters).

Jack C. Auspitz, Esq., Morrison & Foerster LLP, New York, Liaison Counsel for Defendants (Issuers).

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Over the last eleven months, plaintiffs have brought over 860 securities class actions against more than 200 companies and approximately 40 investment banks ("underwriters") alleging, in the broadest terms, that these defendants violated federal law by manipulating the prices of stocks that the companies had issued to the public. Because the hundreds of complaints share some common issues, Chief Judge Michael B. Mukasey ordered them consolidated for pretrial purposes and assigned the cases to this Court on August 9, 2001. *See* Order, *In re Initial Public Offering Sec. Litig.*, 21 MC 92 (Aug. 9, 2001).

Many, but not all, of the underwriters have moved to recuse this Court for various reasons under 28 U.S.C. § 455 (the "moving defendants"). In support of their motion, the moving defendants have proffered the affidavits and declarations of Professors Geoffrey Hazard and Charles Wolfram as experts in judicial ethics. For the reasons that follow, these declarations must be precluded.[1]

## I. LEGAL STANDARD

■ "It is well-established that 'the trial judge has broad discretion in the matter of the admission or exclusion of expert evidence.'" *Boucher v. United States Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir.1996) (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 8 L.Ed.2d 313 (1962)). Nonetheless, "[i]n evaluating

---

1. Because these declarations are precluded, for the reasons stated below, they are being filed under seal.

the admissibility of expert testimony, this Court requires the exclusion of testimony [that] states a legal conclusion." *United States v. Feliciano*, 223 F.3d 102, 121 (2d Cir.2000) (quotation marks and citation omitted) (alteration in original); *see also Marx & Co. v. Diners' Club Inc.*, 550 F.2d 505, 510 (2d Cir.1977). Indeed, "[t]his circuit is in accord with other circuits in *requiring* exclusion of expert testimony that expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir.1992) (emphasis added).

## II. BACKGROUND

At a conference held on September 26, liaison counsel[2] for the underwriters informed this Court that certain underwriters had decided to seek recusal based on this Court's purchases and sales of particular stocks. Over the next two weeks, the Court held several conferences to discuss the proposed recusal.

On October 3, without permission of the Court, the moving defendants submitted a fifteen-page declaration by Professor Geoffrey C. Hazard, Jr. According to the declaration, the moving defendants had asked Professor Hazard to "give [his] opinion concerning whether 28 U.S.C. § 455 requires recusal of the presiding district court judge, Honorable Shira A. Scheindlin." 10/3/01 Hazard Decl. ¶ 2. Throughout his nine-page opinion, Professor Hazard "relied upon the Statement of Facts prepared at [his] request by counsel for defendants in this action and attached hereto as Exhibit A," *id.* ¶ 3, which accounted for an additional six pages (single-spaced) of the declaration.

On Friday afternoon, October 12, the Court received a letter from the under-writer liaison firm requesting permission "to file a thirty-five page memorandum of law and an approximately forty-page supporting declaration from Charles W. Wolfram, the Charles Frank Reavis Sr. Professor Emeritus at the Cornell Law School." 10/12/01 Letter from Penny Shane of Sullivan & Cromwell. The letter further stated, "we also plan on submitting an affidavit attaching approximately twenty-five exhibits . . . ." *Id.* After considering the request, the Court issued the following order by email:

> The page limit on the memorandum of law is extended to 35 pages. A 40–page declaration is excessive in length and will not be considered by the Court. Counsel should submit a list of the proposed exhibits. Until such list is reviewed by the Court, no exhibits will be considered.

After reviewing the e-mail, the liaison law firm contacted a law clerk by phone and asked whether there was some page number between zero and forty that the Court would accept. *See* 10/15/01 (11:00 a.m.) Tr. at 7. In response, the Court instructed the clerk to say it would allow fifteen pages to be submitted. *See id.* The Court also had the clerk notify the liaisons with the following email: "At the request of the counsel for the defendant-underwriters, the Court will accept a declaration from Professor Wolfram that is not to exceed 15–pages in length."

On Monday, October 15, 2001, the Court convened a telephone conference to discuss the proposed exhibit list and the declarations of Professors Hazard and Wolfram. At that conference, the Court raised the issue of whether the affidavits and declara-

---

**2.** Because of the size of this litigation, the following firms serve as liaisons for the parties and their counsel: Milberg Weiss Bershad Hynes & Lerach LLP and Bernstein Liebhard & Lifshitz, LLP (plaintiffs); Sullivan & Cromwell (underwriters); Morrison & Foerster LLP (issuers).

tions by Professors Hazard and Wolfram were admissible. *See* 10/15/01 (11:00 a.m.) Tr. at 19–20. Specifically, the Court stated that, in its view, affidavits "are supposed to put in factual material, but they're not suppose to in essence, make an additional legal argument." *Id.* at 19. After encouraging the moving defendants to share the declarations with the plaintiffs and discuss whether they should be admitted, *see id.* at 26, the Court adjourned the conference until later that day. *See id.* at 30.

At the reconvened conference, the plaintiffs informed the Court that they had reviewed the declaration by Professor Wolfram and believed it was "nothing more than an attempt to camouflage what is clearly an opinion as a matter of law on a legal issue by just using some facts as background for his conclusion." 10/15/01 Tr. (5:35 p.m.) at 8. The Court then instructed the parties to submit letter-briefs on whether the declarations of Professors Hazard and Wolfram should be admitted. *See id.* at 10, 12–13.

### III. DISCUSSION

#### A. Should the Court Accept Expert Opinion on a Recusal Motion?

■ "This Court has repeatedly held that the testimony of an expert on matters of domestic law is inadmissable for *any* purpose." *Music Sales Corp. v. Morris,* 73 F.Supp.2d 364, 381 (S.D.N.Y.1999)(emphasis added). The law of this circuit is that while an expert may provide an opinion to help a jury or a judge understand a particular fact, "he may not give testimony stating ultimate legal conclusions based on those facts." *United States v. Bilzerian,* 926 F.2d 1285, 1294 (2d Cir.1991); *see also Andrews v. Metro North Commuter R.R.*

*Co.,* 882 F.2d 705, 708 (2d Cir.1989) (holding that engineer's testimony that defendant was negligent was an improper legal conclusion); *United States v. Scop,* 846 F.2d 135, 140 (2d Cir.), *modified on other grounds,* 856 F.2d 5 (2d Cir.1988) (holding that expert's statements that defendants violated securities law and "drew directly upon the language of the statute" were legal conclusions that "went well beyond his province as an expert").

The rule prohibiting experts from providing their legal opinions or conclusions is "so well-established that it is often deemed a basic premise or assumption of evidence law—a kind of axiomatic principle." Thomas Baker, "The Impropriety of Expert Witness Testimony on the Law," 40 *U. Kan. L.Rev.* 325, 352 (1992).[3] In fact, every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law. *See Nieves–Villanueva v. Soto–Rivera,* 133 F.3d 92, 100 (1st Cir.1997) (excluding expert legal opinion "because the judge's expert knowledge of the law makes any such assistance at best cumulative, and at worst prejudicial"); *Weston v. Washington Metro. Area Transit Auth.,* 78 F.3d 682, 684 n. 4 (D.C.Cir.1996) ("An expert witness may not deliver legal conclusions on domestic law, for legal principles are outside the witness' area of expertise under Federal Rule of Evidence 702."); *Snap–Drape, Inc. v. Comm'r of Internal Revenue,* 98 F.3d 194, 198 (5th Cir.1996) ("We have repeatedly held that this rule does not allow an expert to render conclusions of law."); *United States v. Sinclair,* 74 F.3d 753, 757–58 n. 1 (7th Cir.1996) ("Federal Rules of Evidence 702 and 704 prohibit experts from offering opinions about legal issues that will determine the outcome of a case. That is, they cannot testify about legal

---

3. *See also* Note, "Expert Legal Testimony," 97 *Harv. L.Rev.* 797, 797 (1984) (stating that

"it remains black-letter law that expert legal testimony is not permissible").

issues on which the judge will instruct the jury."); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir.1995) ("To that end, his testimony was not a fact-based opinion, but a statement of legal conclusion. The legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony."); *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir.1994) ("We also believe this testimony was received in violation of the Federal Rules of Evidence.... It is the responsibility of the court, not testifying witnesses, to define legal terms. The expert's testimony in this regard invaded the province of the court."); *Aguilar v. Int'l Longshoremen's Union Local #10*, 966 F.2d 443, 447 (9th Cir.1992) ("Here, the reasonableness and foreseeability of the casual workers' reliance were matters of law for the court's determination. As such, they were inappropriate subjects for expert testimony."); *United States v. Leo*, 941 F.2d 181, 196 (3rd Cir.1991) (stating that "it is not permissible for a witness to testify as to the governing law"); *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir.1990) ("A witness also may not testify to the legal implications of conduct; the court must be the jury's only source of law."); *Specht v. Jensen*, 853 F.2d 805, 807 (10th Cir.1988) (en banc) ("There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge.... To allow anyone other than the judge to state the law would violate the basic concept.") (quotation marks and citation omitted); *Adalman v. Baker, Watts & Co.*, 807 F.2d 359, 368 (4th Cir.1986) ("From beginning to end, it is obvious that Appellants proffered [the person] as an

expert witness to testify in substantial part to the meaning and applicability of [law]. This flies squarely in the face of the precedent—and the logic of that precedent ....").

Courts make one exception to this strict rule—when interpreting foreign law, expert legal opinion may be allowed. *See Nieves–Villanueva*, 133 F.3d at 99; *Marx & Co.*, 550 F.2d at 510. Experts may also give limited testimony on mixed questions of law and fact, but the testimony must remain focused on helping the jury or judge understand particular facts in issue and not opine on the ultimate legal conclusion. *See, e.g., In re Air Disaster at Lockerbie, Scotland*, 37 F.3d 804, 826–27 (2d Cir.1994) (holding that expert's testimony that defendants engaged in "fraud" and "deceit" was admissible because the words were used in colloquial fashion, but statement that defendants violated federal regulations was inadmissible as a legal conclusion); *Specht*, 853 F.2d at 809–10 (discussing the distinction).[4]

The question presented on the recusal motion is whether 28 U.S.C. § 455 requires this Court to disqualify itself. This decision involves nothing more than interpreting the statute given certain undisputed facts; it is solely a question of law. *See Jefferson County v. Acker*, 92 F.3d 1561, 1581 (11th Cir.1996) (en banc), *vacated on other grounds*, 520 U.S. 1261, 117 S.Ct. 2429, 138 L.Ed.2d 191 (1997) ("Whether a judge is disqualified, that is, must not take part in deciding a case, is a question of law."); *In re City of Houston*, 745 F.2d 925, 927 (5th Cir.1984) ("The issue of judi-

---

4. *See generally* Laurie Strauch Dix, "Preclusion of Legal Experts as Expert Witnesses," SF78 ALI–ABA 295, 297 (2001) (providing a "review of the recent case law in this area" under the Federal Rules of Evidence and stat-

ing: "Experts are usually permitted to testify about questions of fact and within certain limits, about mixed questions of law and fact. They may not testify to the ultimate legal conclusion based on those facts.").

cial disqualification is solely one of law.").[5] Given that expert opinion may not address issues of law, it follows that expert opinion on a recusal motion cannot be admitted unless it involves the rare case where a fact is in dispute. As defendants concede, this is not such a case. *See* Moving Underwriters' Memorandum of Law in Support of ·Motion to Submit Declarations of Professors Hazard and Wolfram ("Def.Mem."), at 6 n. 3 ("Here, of course, the Declarations are based on undisputed facts . . . .").

The only opinion that this Court has found addressing the issue of expert testimony on a recusal motion reached the same conclusion. *See United States v. Eyerman*, 660 F.Supp. 775, 781 (S.D.N.Y. 1987) (Pollack, J.). In *Eyerman*, Judge Milton Pollack considered a recusal motion made under 28 U.S.C. § 455 by the defendant, a Vice–President of underwriter First Jersey Securities. *Id.* at 781. In support of the motion, Professors Geoffrey Hazard and Monroe Freedman furnished affidavits as "experts on ethics" and supported "their submission with a

weighty compendium of their extracurricular activities to give verisimilitude to their sworn legal conclusions." *Id.* Judge Pollack rejected the affidavits and stated: "Supplying such affidavits under these circumstances seems rather presumptuous, considering that the affiants have not been asked by the Court for their views on the law and how the motion should be decided." *Id.*[6]

■ Despite the weight of authority against admitting expert opinion on an issue of law, the Court has nonetheless—at the request of the defendants—reviewed the declarations by Professors Hazard and Wolfram. This Court's careful review reveals what will always be the case in a recusal motion when the facts are undisputed: The declarations offer—indeed, they only purport to offer—legal opinions and analyses on the question of whether the statute requires recusal. As Professor Hazard's declaration states: "I have been asked to give my opinion concerning whether 28 U.S.C. § 455 requires recusal of the presiding district court judge . . . . In reaching the following opinions, I have

---

**5.** *Cf. In re McKesson HBOC, Inc. Sec. Litig.*, 126 F.Supp.2d 1239, 1246 (N.D.Ca.2000) (striking from the record "three declarations from law professors opining on the ethical propriety of the various solicitation tactics that the firm employed, a purely legal question"); *GST Telecomm., Inc. v. Irwin*, 192 F.R.D. 109, 111 (S.D.N.Y.2000) (stating that "testimony of legal experts on ethics in the profession is hardly an occasion for which credible experts supply legal opinions") (Pollack, J.) (citation and quotation marks omitted); *Fishman v. Brooks* 396 Mass. 643, 487 N.E.2d 1377, 1381 (1986) ("Expert testimony concerning the fact of an ethical violation is not appropriate, any more than expert testimony is appropriate concerning the violation of, for example, a municipal building code."); *Commonwealth v. Lambert*, No. 0423–1992, 1998 WL 558749, at *10 n. 34 (Pa.Com.Pl. Aug.24, 1998) (excluding Professor Wolfram's testimony on ethical propriety of lawyers' conduct and stating: "The interpretation of

the Rules of Professional Conduct and the Rules of Criminal Procedure is a legal issue to be decided by a court, for which use of an expert would be wholly inappropriate. A court may not abdicate its role to determine the ultimate issue by allowing expert testimony.").

**6.** In addition, Judge Pollack found even more fault with the "gratuitous sworn legal opinions" of Professors Hazard and Freedman because they were based on "uninformed hearsay." *Id.* at 781. It is true that this case differs from *Eyerman* because these "Declarations are based on undisputed facts, not 'uninformed hearsay.'" Def. Mem. at 6. However, as Judge Pollack's opinion makes clear, even if the professors had not been completely ignorant of the facts in that case, their declarations would still be "presumptuous," "gratuitous," and "extracurricular legal opinions." *Id.*

relied upon the Statement of Facts prepared at my request by counsel . . . ." Hazard Decl. ¶¶ 2, 3. Likewise, Professor Wolfram begins his declaration: "In summary, my opinion is that the facts compel her to recuse herself." Wolfram Declaration ¶ 1. Throughout both declarations, the refrain is the same: In their expert opinion, section 455 requires recusal.

Although this Court certainly has respect for Professors Hazard and Wolfram, they are only offering opinions based on undisputed facts. It is beyond dispute that "although an expert may opine on an issue of fact . . . he may not give testimony stating ultimate legal conclusions based on those facts." *Bilzerian*, 926 F.2d at 1294.

## B. The Arguments of the Moving Defendants

Despite the weight of the authority that precludes admitting expert opinion on this motion, I shall nonetheless briefly address the arguments made by the moving defendants in support of their motion to accept the experts' declarations. *First*, they argue that the Federal Rules of Evidence do not apply to a recusal motion and that "all available guidance" should be received. *See* Def. Mem. at 5. *Second*, they contend that even if the Federal Rules of Evidence do apply, in particular Rule 702, the declarations should be admitted because Professors Hazard and Wolfram are experts in ethics. *See id.* at 7–10. Both of these arguments fail.

### 1. Should the Court Accept "All Available Guidance" on a Recusal Motion?

The moving defendants first argue that:

[T]he record on recusal motion is not limited to material that would be admissible under the Federal Rules of Evidence. *See Hodgson v. Liquor Salemen's Union Local No. 2*, 444 F.2d 1344, 1349 (2d Cir.1971). Therefore, a declaration that might otherwise be inadmissible under the Federal Rules of Evidence should still be considered on a recusal motion, even if an evidentiary flaw reduces the declaration's weight.

*Id.* at 6. Based on this argument, the moving defendants conclude that "[o]n a recusal motion, the Court should receive *all* available guidance." Def. Mem. at 5 (emphasis added).

The moving defendants' reliance on *Hodgson* is inapposite and easily addressed. In that case, as well as in the other cases cited by the moving defendants, the hearsay statements were offered by the parties as the *grounds* for the recusal motion.[7] *See Hodgson*, 444 F.2d at 1347 (rejecting a recusal motion based on an attorney's statements "that he was very close to [the judge]" and "he could get favored treatment from her"). Accordingly, these courts were willing to consider the hearsay statements in deciding the recusal motions. Similarly, this Court will consider hearsay regarding its own financial transactions when it decides the recusal motion.

The moving defendants' assertion that "[o]n a recusal motion, the Court should receive *all* available guidance" is far too broad. Def. Mem. at 5 (emphasis added).

---

**7.** Specifically, the moving defendants cite *United States v. Microsoft Corp.*, 253 F.3d 34, 107–111 (D.C.Cir.2001) (disqualifying judge from imposing remedy in antitrust case based on his statements to the press); *Berger v. United States*, 255 U.S. 22, 28–29, 36, 41 S.Ct. 230, 65 L.Ed. 481 (1921) (holding that recusal was required based on evidence of judge's statements of bias against a particular ethnic group); *In re Boston's Children First*, 244 F.3d 164, 166, 171 (1st Cir.2001) (holding that recusal was required based on newspaper report of interview with trial judge).

No court can accept *all* available guidance on *any* matter. It would be unwise, if not impossible, for this Court to allow anyone that has a thoughtful opinion on a matter to submit a declaration.[8]

Moreover, this Court has the inherent authority "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991) (quotation marks omitted).[9] In this case, for example, the Court has extended its page limits on briefs as well as convened six conferences to discuss the recusal motion. But there is no reason to think that this Court, or any court, should accept "all available guidance" when a recusal motion is made.

### 2. Do the Proposed Expert Opinions Fall Under Rule 702?

■ The moving defendants' second argument is that "[e]ven if the Federal Rules of Evidence did apply in proceedings on recusal, the Wolfram and Hazard Declarations would be admissible" because "expert testimony is allowed from those with 'scientific, technical, or other specialized

knowledge.'" Def. Mem. at 7 (quoting Fed.R.Evid. 702). This argument fares no better than the first one.

Rule 702 states in pertinent part:

*If* scientific, technical, or other specialized knowledge will assist the *trier of fact* to understand *the evidence* or to determine *a fact in issue,* a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise ....

Fed.R.Evid. 702 (emphasis added). As Rule 702's plain language shows, the opinion of an expert witness is *only* admissible if it (1) assists the trier of fact in (2) understanding the evidence or determining a disputed fact.

The moving defendants' argument that Rule 702 allows the declarations to be admitted fails for two reasons. *First,* this motion does not call for a trier of fact; a motion to recuse is not a trial. *Second,* even if this Court could be properly labeled a "trier of fact," there is no fact or evidence in issue. The moving defendants concede as much when they state:

---

8. Consider the following list of full-time law professors who write in the field of ethics, some of whom already have an opinion on whether this Court should recuse itself and others who might:

Tom Baker (Connecticut), David Boerner (Seattle), Karen Bowdre (Cumberland), George Meredith Cohen (Virginia), Robert C. Fellmeth (San Diego), James A. Fischer (Southwestern), Stephen Gillers (N.Y.U), Geoffrey C. Hazard (Penn.), David Hyman (Maryland), Robert H. Jerry (Memphis), Andrew L. Kaufman (Harvard), Tom B. Metzloff (Duke), Nancy L. Moore (Rutgers), Thomas D. Morgan (George Washington), David Jackson Patterson (Montana), Stephen L. Pepper (Denver), Ellen Smith Pryor (SMU), William G. Ross (Cumberland), Ronald Daniel Rotunda (Illinois), Thomas J. Schneyer (Arizona), Charles Silver (Texas), Kent Syverud (Vanderbilt), Charles W. Wol-

fram (Cornell), and Fred Zacharias (San Diego).
Ellen S. Pryor & Charles Silver, "Defense Lawyers' Professional Responsibilities," 78 *Tex. L.Rev.* 599, 605 n. 16 (2000).

9. *See also* Fed.R.Civ.P. 16 ("In any action, the court may in its discretion direct the attorneys for the parties and any unrepresented parties to appear before it for a conference or conferences before trial .... At any conference under this rule consideration may be given, and the court may take appropriate action, with respect to ... the avoidance of unnecessary proof and of cumulative evidence, and *limitations or restrictions on the use of testimony under Rule 702 of the Federal Rules of Evidence* .... [and] such other matters as may facilitate the just, speedy, and inexpensive disposition of the action.") (emphasis added).

The Declarations' reliability flows from the unquestioned expertise of their authors in matters of judicial ethics. It is enhanced by the authors' review of *factual material that is itself not subject to dispute,* including transcripts of proceedings, court orders, and notices to counsel.

Def. Mem. at 7 (citation omitted) (emphasis added); *see also id.* at 6 n. 3 ("Here, of course, the Declarations are based on *undisputed facts* ....") (emphasis added). Because these two statutory requirements are not satisfied, the declarations may not be admitted under Rule 702.[10]

## IV. CONCLUSION

When discussing expert opinion, Judge Learned Hand once warned trial courts: "Argument is argument whether in the [witness] box or at the bar, and its proper place is the last." *Nichols v. Universal Pictures Corp.,* 45 F.2d 119, 123 (2d Cir. 1930). The same can be said here because the declarations of Professors Hazard and Wolfram only advocate a particular interpretation of a statute and the ultimate outcome of the motion.

In our adversarial system, lawyers make arguments, judges write legal opinions—and there is no such thing as an expert opinion when it comes to interpreting a statute unless that opinion belongs to a court.[11] Professors Hazard and Wolfram are free to consult with the moving defendants, sign their brief, or both. They may attend the conferences and argue on their behalf. They could have submitted an amicus brief arguing how the law *should be* interpreted, although the time for such a submission has passed. But it remains this Court's exclusive duty and province "to say what the law is." *Marbury v.*

**10.** The defendants cite a number of cases for the proposition that courts "permit expert testimony under Rule 702 in order to assist them in determining the relationship between the facts and applicable legal or ethical standards." Def. Mem. at 9. Most of the cases, however, were jury trials in which the court allowed the experts to testify to assist the jury in understanding complicated terms or concepts, far outside the experience of the average juror. *See United States v. Kellington,* 217 F.3d 1084 (9th Cir.2000); *Innes v. Howell Corp.,* 76 F.3d 702 (6th Cir.1996); *Fiataruolo v. United States,* 8 F.3d 930 (2d Cir.1993); *United States v. Bednar,* 728 F.2d 1043 (8th Cir.1984); *United States v. McDade,* No. 92–249, 1995 WL 476230, at *1 (E.D.Pa. Aug.7, 1995).

In two of the other cases cited by the moving defendants, expert opinions were considered by either the trial court or the appellate court. *See In re Grievance Committee,* 847 F.2d 57 (2d Cir.1988); *Fisons Corp. v. Atochem North Am., Inc.,* No. 90 Civ. 1080, 1990 WL 180551, at *7 (S.D.N.Y. Nov. 14, 1990). However, a cursory inspection of *In re Grievance Committee* reveals its unique procedural posture. There a committee of lawyers, not a trial court, considered expert testimony on the meaning of a Disciplinary Rule. *See* 847 F.2d at 62. That expert testimony then became part of the record on appeal. *See id.* Furthermore, in *Fisons,* the court did not address the admissibility of expert testimony, which may never have been challenged. In contrast, whenever courts have explicitly addressed the admissibility of expert legal opinion, they have found such opinions inadmissible. *See* Part III.A., *supra.*

**11.** As one court has commented: "Each courtroom comes equipped with a 'legal expert,' called a judge ...." *Burkhart v. Washington Metro. Area Trans. Auth.,* 112 F.3d 1207 (D.C.Cir.1997). For historical background on "[t]he opinion rule and the use of expert testimony developed to fill a need for information resulting from the transformation to the adversarial trial system," see Baker, *supra,* "The Impropriety of Expert Witness Testimony on the Law," 40 *U. Kan. L.Rev.* at 326–35. For recent criticism on ethical as well as legal grounds of those professors willing to testify as experts in matters involving violations of ethical rules, see Carl M. Selinger, "The Problematic Role of the Legal Ethics Expert Witness," 13 *Geo. J. Legal Ethics* 405 (2000).

*Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

The moving defendants' motion to submit the declarations of Professors Hazard and Wolfram as expert opinion is therefore denied.

SO ORDERED.