**THE PINAL CREEK GROUP, et al., Plaintiffs,**

v.

**NEWMONT MINING CORP., et al., Defendants.**

**No. CV911764–PHX–DAE(LOA).**

United States District Court, D. Arizona.

Jan. 24, 2005.

---

Fredric D. Bellamy, Esq., Nicholas J. Wallwork, Esq., George Hamilton King, Esq., Beshears Wallwork Bellamy, Lucas J. Narducci, Esq., William W. Pearson, Bryan Cave LLP, Michael K. Kennedy, Esq., John E. Lundin, Esq., J. Stanton Curry, Gallagher & Kennedy PA, Phoenix, AZ, for Plaintiffs.

Gerald S. Maltz, Esq., Haralson Miller Pitt & McAnally PC, Steven B. Weatherspoon, Esq., Chandler & Udall LLP, Tucson, AZ, Karl Michael Tilleman, Esq., Keller Rohrback PLC, Nicholas J. Wallwork, Esq., Beshears Wallwork Bellamy, Lucas J. Narducci, Esq., William W. Pearson, Bryan Cave LLP, Phoenix, AZ, Michael John Gallagher, Esq., William Anthony Bianco, Dean C. Miller, Laura J. Nagle, Davis Graham & Stubbs LLP, Atlantic Richfield, Denver, CO, James L. Lucari, Warrenville, IL, Ernest John Getto, Esq., Michael George Romey, Damon Paul Mamalakis, Richard Scott Pearson, Latham & Watkins, John Marquette Rochefort, Esq., Patrick Ward Dennis, Esq., Michael David Young, Esq., Weston Benshoof Rochefort Rubalcava & MacCuish LLP, Los Angeles, CA, for Defendants.

## ORDER

ANDERSON, United States Magistrate Judge.

This matter arises on the Motion in Limine of Defendant Atlantic Richfield Company ("Atlantic Richfield" or "ARCO"). (document #1573) Atlantic Richfield seeks to exclude Plaintiffs' proffered expert testimony from the Phase One trial. Atlantic Richfield also renews its previously filed Motion to Strike Plaintiffs' Legal Experts (document #1014) which the Court denied, without prejudice, as premature during the discovery phase. Plaintiffs oppose the pending motion. As an initial matter, Plaintiffs assert that the motion is premature. After consultation with District Judge Ezra, the undersigned finds it appropriate to resolve the pending motion in limine and the renewed motion to strike. When Atlantic Richfield first filed its motion to strike, discovery was still ongoing. Discovery has since closed and the Court has ruled on motions for summary judgment. Accordingly, the Court finds that it is appropriate to rule of the pending motion in limine and renewed motion to strike.

At issue in the pending motion is the preclusion of Plaintiffs PDMI/Inspirations' seven experts from testifying during Phase One of the trial. These experts include Frank Lewis, Orlando Delogu, Jeffrey Haas, and Jonathan Rose. The reports of these experts are attached to Atlantic Richfield's previously filed Motion to Strike Reports and Testimony of Plaintiffs' Legal Experts (document #1014) and are included in the notebook accompanying the pending Motion in Limine (the "Notebook") as Exhibits A–D. Plaintiffs also identified Einer Elhauge whose expert report is attached to the Motion in Limine

(document # 1573) as Exhibit E. Finally, Plaintiffs also plan to call Dr. Donald Gentry, a mining engineer, and Dr. Fredric Quivik, a historian of technology, whose reports are exhibits E and F in the Notebook. The Court will consider each of these experts' proffered opinions after discussing the procedural history of this matter.

### BACKGROUND

On February 4, 2002, Atlantic Richfield filed a Motion to Strike Reports and Testimony of Plaintiffs' Legal Experts (document # 1014) directed to the proposed testimony of law professors Orlando Delogu, Jeffrey Haas, and Jonathan Rose, and attorney Frank Lewis[1]. On April 24, 2002, the undersigned denied without prejudice Atlantic Richfield's Motion to Strike Reports and Testimony of Plaintiffs' Legal Experts as premature. The undersigned indicated that it would resolve the motion as trial approached. The Court, however, stated that the proffered legal opinion evidence proposed by the foregoing experts was likely inadmissible. The undersigned concluded that because "the Court, not a jury, will likely be the trier of fact in this case, the experienced trial judge herein is more than capable of understanding the evidence and is equally as capable as the law professors and lawyer experts of determining the applicable law and is surely able to apply the law to the evidence notwithstanding the complexities and challenges of this case. Thus, expert testimony on the law will not likely 'assist the trier of fact to understand the evidence or to determine a fact in issue' as required by Rule 702." (document # 1053 at 5–6, Notebook Exh. J at 5–6)

After the undersigned's ruling on the original motion to strike, on December 27, 2002, the Court granted summary judgment in favor of Atlantic Richfield on all issues relating to Plaintiffs' alter ego and joint venture claims. (document # 1219, # 1220) Accordingly, the only claim remaining against Atlantic Richfield concerning pollution from Inspiration facilities is Plaintiffs' claim that Anaconda was a "direct operator" of Inspiration's pollution-causing facilities or a "direct arranger" of the disposal of wastes from those facilities. (See document 1221 at 16) This claim will be tried at the Phase One trial.

### RELEVANT LAW

Under Plaintiffs' direct operator liability claim that will be tried during Phase One, Plaintiffs must prove that sole agents of Anaconda "manage[d], direct[ed], or conduct[ed] operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Bestfoods*, 524 U.S. at 66–67, 118 S.Ct. 1876, (document # 1221 at 10) Under the rule of *Bestfoods*, Plaintiffs must prove their "arranger" liability claim through evidence that Anaconda sole agents arranged for disposal of hazardous substances owned or possessed by Anaconda. See, *Transportation Leasing Co. v. California*, 861 F.Supp. 931, 941 (C.D.Cal.1993)(holding that arranger liability claim requires proof that defendant "arranged" for the disposal of hazardous substances "owned or possessed" by defendant.); *Raytheon Constructors, Inc. v. Asarco, Inc.*, 368 F.3d 1214, 2003 WL 984623, at * 5 (10th Cir.2003)(stating that "[t]he *Bestfoods*

---

[1]. Atlantic Richfield's Motion to Strike was also directed at the report of Frank Lewis concerning joint venture law. In view of the Court's ruling granting summary judgment on Plaintiff's joint venture claim, counsel for PDMI/Inspiration advises that they will not offer Mr. Lewis' testimony at the Phase One trial. Thus, the Court need not consider the admissibility of Mr. Lewis' testimony.

holding regarding operator liability also logically applies to cases involving arranger liability."); *Coeur D'Alene Tribe v. Asarco*, 280 F.Supp.2d 1094, 1131 (D.Idaho 2003)("Applying *Bestfoods* in an arranger liability context, it appears that arranger liability requires active involvement in the arrangements of disposal of hazardous substances.")

█ Both operator and arranger liability require an analysis of the totality of the circumstances. See, *K.C.1986 Ltd. Partnership v. Reade Mfg.*, 33 F.Supp.2d 820, 834 (W.D.Mo.1998)(operator liability requires an analysis of the totality of the circumstances of a party's involvement at the site.) Under *Bestfoods*, in resolving the direct operator and arranger issues, the court should consider the totality of the circumstances. The "totality of the circumstances" standard permits the trier of fact to consider the context in which the parties' action occurred. The Court, therefore, finds that PDMI and Inspiration may offer evidence about the factual background of Inspiration and Anaconda's business relationship. This context will assist the trier of fact in assessing the significance of certain actions taken by Anaconda agents. See, *Coeur D'Alene Tribe v. Asarco, Inc.*, 280 F.Supp.2d 1094, 1127 (D.Idaho 2003)(applying the totality of the circumstances standard to analyze operator liability and stating that "[t]he question is not confined solely to whether Asarco and Hecla operated the day-to-day affairs of their business offices or plants but who all was involved in the operations and activities of the mines and mills themselves.")

In *Bestfoods*, the Court held that the proper inquiry for determining CERCLA direct operator liability focuses on the participation in activities of the polluting facility, not the activities that solely relate to the subsidiary. *United States v. Bestfoods*, 524 U.S. 51, 68, 118 S.Ct. 1876, 141 L.Ed.2d 43 (1998)(Explaining that "[t]he question is not whether the parent operates the subsidiary, but whether it operates the facility, and that operation is evidenced by participation in the activities of the facility, not the subsidiary.") The Supreme Court, however, did not state that evidence of the relationship between the parent and the subsidiary was irrelevant to the inquiry of whether a parent's sole agents directed, managed, or conducted activities at a subsidiary's facility. *Id.* In *Bestfoods*, the Court attempted to define the term "operator" as used in CERCLA. The Court consulted the Webster's New International Dictionary and the American Heritage Dictionary to arrive at the definition of an operator as "simply someone who directs the workings of, manages, or conducts the affairs of a facility." *Id.* "Management" and "direction" are synonyms for "control." See *Webster's Collegiate Thesaurus* 173 (1976).

In view of the foregoing, the undersigned finds that, although such evidence cannot be determinative of the issue of direct operator or arranger liability, evidence of the corporate relationship between Anaconda and Inspiration is relevant to provide important factual background in this matter. Such background information is important because in determining whether operator liability exists for the acts of an investor's sole agents, the corporate norms are critical reference points. Evidence of the corporate norms is critical because "the acts of direct operation that give rise to parental liability must necessarily be distinguished from the interference that stems from the normal relationship between parent and subsidiary." *Bestfoods*, 524 U.S. at 71, 118 S.Ct. 1876. In *Bestfoods*, the Supreme Court held that "[t]he critical question is whether, in degree and detail, actions directed to the facility by an agent of the parent alone are eccen-

tric under accepted norms of parental oversight of a subsidiary's facility." *Id.* at 72, 118 S.Ct. 1876. This determination necessarily involves consideration of evidence of the corporate relationship and corporate norms. See, *BP Amoco Chem. Co. v. Sun Oil Co.,* 316 F.Supp.2d 166 (D.Del.2004)(granting summary judgment against party who failed to produce evidence to show that parent's actions were unusual under the accepted norms of parental oversight of a subsidiary's facility.) In this case, to determine whether the actions of Anaconda's sole agents give rise to direct operator liability, the fact finder must consider whether those actions were consistent with investor oversight, or if they were beyond corporate norms and were eccentric. This analysis requires the fact finder to examine the relationship between the two corporations. Thus, evidence of the corporate relationship between Inspiration and Anaconda is relevant to the issue of direct operator liability.

Similarly, the relationship between Anaconda and Inspiration is relevant to the determination of direct arranger liability. Arranger liability and operator liability are distinct legal theories under CERCLA. *General Electric v. AAMCO Transmissions, Inc.,* 962 F.2d 281, 287 (2d Cir.1992). In *United States v. Shell Oil Co.,* 294 F.3d 1045 (9th Cir.2002), the Ninth Circuit set forth two standards for determining arranger liability. In *Shell Oil,* the Ninth Circuit stated that a "direct arranger must have direct involvement in arrangements for the disposal of waste." *Id.* at 1055. The court also recognized a broader arranger liability. *Id.* The court noted that "control is a crucial element of the determination of whether a party is an arranger subject to CERCLA liability for arranging disposal, treatment, or transportation of hazardous substance." *Id.* at 1055.

The Court will consider the pending motion in limine in view of the foregoing principles which apply to Plaintiffs' operator and arranger claims.

## ANALYSIS

### I. Expert Testimony of Professors Delogu, Haas, Rose, and Elhauge

Atlantic Richfield contends that the opinions of law professors Delogu, Haas, Rose, and Elhauge are inadmissible legal opinions. Before discussing each expert's proffered opinion, the Court will discuss the law regarding admission of appropriate expert testimony.

Federal Rule of Evidence 702 provides for the liberal admission of expert testimony regarding factual matters. Expert testimony is admissible when it will assist the trier of fact in understanding the evidence or determining a disputed issue of fact. *United States v. Brodie,* 858 F.2d 492, 496 (9th Cir.1988). However, "resolving doubtful questions of law is the distinct and exclusive province of the trial judge." *Id.* at 497. Accordingly, federal courts typically prohibit lawyers, professors, and other experts from interpreting the law for the court or from advising the court about how the law should apply to the facts of a particular case. Testimony "which articulates and applies the relevant law ... circumvents the [fact finder's] decision-making function by telling it how to decide the case." *Specht v. Jensen,* 853 F.2d 805 (10th Cir.1988).

The principle that legal opinion evidence concerning the law is inadmissible is " 'so well-established that it is often deemed a basis premise or assumption of evidence law—a kind of axiomatic principle.' " *In re Initial Public Offering Sec. Litigation,* 174 F.Supp.2d 61, 64 (S.D.N.Y.2001)(quoting Thomas E. Baker, *The Impropriety of Expert Witness Testimony on the Law,* 40

U. Kan. Law Rev. 325, 352 (1992)). The rule regarding legal testimony has been stated as follows:

A witness cannot be allowed to give an opinion on a question of law ..... In order to justify having courts resolve disputes between litigants, it must be posited as an a priori assumption that there is one, but only one, legal answer for every cognizable dispute. There being only one applicable legal rule for each dispute or issue, it requires only one spokesman of the law, who of course is the judge .... To allow anyone other than the judge to state the law would violate the basic concept.

*Specht v. Jensen,* 853 F.2d 805, 807 (10th Cir.1988) (citation omitted). Courts have held that expert testimony by lawyers, law professors, and others concerning legal issues is improper. See, *In re Initial Public Offering Sec. Litigation,* 174 F.Supp.2d at 64(stating that "every circuit has explicitly held that experts may not invade the court's province by testifying on issues of law."); *United States v. Zipkin,* 729 F.2d 384, 387 (6th Cir.1984)(reversing trial court's decision to allow bankruptcy judge to testify regarding his interpretation of the Bankruptcy Act, stating that "[i]t is the function of the trial judge to determine the law of the case."); *Wollan v. U.S. Dept. of Int. Bureau of Land Management,* 997 F.Supp. 1397, 1403 (D.Colo.1998)(finding reliance on expert report improper stating that an expert's "legal opinion as to what the homestead laws say or do not say ... in inapposite.... Where the ultimate issue is a question of law, the opinion of a legal expert, even a lawyer, interferes with the judge's role as 'sole arbiter of the law' and should not be allowed.").

In addition to prohibiting legal expert testimony which defines the governing law, courts have also prohibited legal expert opinion which applies the law to the facts. Many courts have held that the judge is the sole arbiter of the law and its application to the facts. See, *Marx & Co. v. Diners' Club, Inc.,* 550 F.2d 505, 508–11 (2d Cir.1977)(holding that the trial court erred in permitting a lawyer to offer his opinions concerning securities law and the application of that law to the contract in dispute.); *Peterson v. City of Plymouth,* 60 F.3d 469, 475 (8th Cir.1995)(finding that the trial court erred in allowing testimony that police officers' conduct satisfied Fourth Amendment requirements stating that "[the expert's] testimony was not a fact-based opinion, but a statement of legal conclusion. These legal conclusions were for the court to make. It was an abuse of discretion to allow the testimony."); *Montgomery v. Aetna Cas. and Sur. Co.,* 898 F.2d 1537, 1541 (11th Cir.1990)(finding that court abused its discretion by allowing witness to testify that defendant had a duty to hire tax counsel, stating "[a] witness also may not testify to the legal implications of conduct ....."); *Specht v. Jensen,* 853 F.2d at 809(stating that "testimony on ultimate issues of law by the legal expert is inadmissible because it is detrimental to the trial process.").

Consistent with the foregoing opinions, the Ninth Circuit has also excluded legal expert testimony concerning both what the law is and how it should be applied to the facts of a case. See, *Aguilar v. International Longshoremen's Union Local #10,* 966 F.2d 443 (9th Cir. 1992). At issue in *Aguilar* was whether casual workers could establish an enforceable contract based on a promissory estoppel theory. 966 F.2d at 445. The expert's proffered declaration stated that based on the instructions in the employment application, a promise had been made, the workers reasonably relied on the promise, and that reliance was reasonably foreseeable. *Id.* at 447. The Ninth Circuit barred this legal expert evidence because

"reasonableness and foreseeability ... were matters of law for the court's determination." *Id.* at 447. The Court emphasized the rule applicable to expert legal opinion evidence and explained that although Fed.R.Evid. 702 allows for expert testimony if "scientific, technical, or other specialized knowledge will assist the trier of fact," this rule does not permit expert opinion concerning legal matters. Because the reasonableness and the foreseeability of the worker's reliance were matters of law for the court's determination, the court found that those issues were outside the parameters of Fed.R.Evid. 702 and "were inappropriate subjects for expert testimony." *Id.;* See also, *United States v. Weitzenhoff,* 35 F.3d 1275, 1287 (9th Cir.1993)(expert testimony explaining the legal effect of an environmental permit was improper because the judge consigned the interpretation of the law to the jury which was "an impermissible delegation of the district judge's duties ....").

Atlantic Richfield argues that all of Plaintiffs' legal experts offer improper opinions about what the law is and how the law should be applied to the facts of this case. Because determining the law and applying it to the facts is the role of the judge, Atlantic Richfield moves to exclude the testimony of all of the legal experts.

### A. Professor Orlando E. Delogu

Orlando E. Delogu is a law professor at the University of Maine Law School. (Professor Delogu's Expert Report; Notebook, Exh. B at 1, hereinafter "Delogu Report") He describes his expertise as "environmental law, land-use law, administrative law, and state-local government law." (*Id.* at 5) Professor Delogu advises that he was "asked to prepare a memo that outline[s] the State of Maine's law with respect to piercing the corporate veil, an issue that seems germane to these proceedings." (Delogu Report at 5) Professor Delogu's report reveals that he intends to offer legal opinions regarding Maine law on piercing the corporate veil. (*Id.* at 8) Professor Delogu's report discusses Maine law on piercing the corporate veil and "federal assessments" of Maine law. (*Id.* at 10–19) After discussing numerous federal and state cases involving corporate veil piercing, Professor Delogu offers his conclusions regarding Maine veil piercing law. (*Id.* at 19–20.) Professor Delogu's report offers nothing other than a discussion of the law and an application of the law. The report reads more like a legal brief than an expert report. The Court finds that Professor Delogu's proffered testimony constitutes inadmissable legal opinion. The Court, therefore, will preclude Plaintiffs from offering his testimony and his expert report in the Phase I trial.

### B. Professor Jeffrey J. Haas

Professor Jeffrey J. Haas is a law professor at the New York School of Law. (Notebook, Exh. C at 1, hereinafter "Haas Report) He is an expert in 'mergers and acquisitions, general corporate matters ..., and securities offerings.'" (*Id.* at 1) Professor Haas states that he was hired to analyze, from a "corporate law perspective", whether Anaconda "was an 'operator' of a 'facility' ... by virtue of its extensive dealings with Inspiration Consolidated Copper Company, a Maine corporation." (Haas Report at 1) Professor Haas resolved this issue by analyzing the *Bestfoods* decision and applying that case to the facts of the pending litigation. (*Id.*)

The first portion of Professor Haas' report reads like a legal brief which discusses in detail the *Bestfoods* decision and applies that case to the Pinal Creek litigation. (Haas Report at 2–7) The Court finds that Professor Haas' detailed discussion of *Bestfoods* and the application of that case to the facts before the Court constitutes inadmissible legal opinion be-

cause it invades the province of the trial court to determine the law. Accordingly, that portion of Professor Haas' report is precluded from trial.

■ Professor Haas' report then discusses interlocking directors and officers and the significance thereof. This discussion again includes some analysis of the law of interlocking directors and officers but then it goes on to discuss corporate norms regarding this practice. (*Id.* at 7–18) While Professor Haas is precluded from stating the law, because that is solely the province of the trial judge, he should, however, be permitted to opine on corporate norms. As the Court stated in *Best-foods,* corporate norms are crucial reference points for determining whether a parent's actions were eccentric. 524 .U.S. at 71–72, 118 S.Ct. 1876. Professor Haas discusses the relationship between Anaconda and Inspiration and the ways in which that relationship diverged from the corporate norms. Such testimony may assist the trier of fact in resolving whether direct operator or arranger liability should be found. In summary, the Court rules that Professor Haas is precluded from offering legal discussion regarding the law set forth in *Best Foods*. However, he is permitted to testify about corporate norms and the relationship between Inspiration and Anaconda and how that relationship was consistent with, or diverged from, corporate norms.

## C. Professor Jonathan Rose

Jonathan Rose is a law professor who teaches "anti-trust and related courses" at Arizona State University's College of Law. (Notebook Exh. D at 2; hereinafter "Rose Report") He states that he will "opine on the antitrust implications of the relationship between [Anaconda] and [Inspiration]." (*Id.*) Professor Rose states that his opinion is based on his "experience and knowledge of antitrust law and of the ac-

tivities, procedures, and practices of antitrust enforcement authorities." (*Id.* at 3.) Professor Rose's proffered opinions concern whether the relationship between Anaconda and Inspiration violated the antitrust laws. Professor Rose offers a lengthy discussion of federal anti-trust law including a discussion of the Sherman Act and the Clayton Act. (*Id.* at 4–7) He then sets forth the "Anti–Trust Story" of Anaconda and Inspiration. (*Id.* at 9–23) Viewing the relationship of Anaconda and Inspiration in light of federal anti-trust law, Professor Rose opines that:

(1) "The documents reveal that high ranking Antitrust Division officials and staff believed that the interlocking directors between Anaconda and Inspiration violated the federal antitrust laws." (Rose Report at 3)

(2) "It is also my opinion that this relationship violated the federal antitrust laws." (*Id.*)

(3) "Clayton § 8, part of the original Clayton Act, bans interlocking directorates among large corporations engaged in commerce where the elimination of competition by agreement between them would violate[d] (sic) the antitrust laws." (*Id.* at 7)

■ As previously discussed, the only claim remaining against Atlantic Richfield concerning pollution from Inspiration facilities is Plaintiffs' claim that Anaconda was a "direct operator" of Inspiration's pollution-causing facilities or a "direct arranger" of the disposal of wastes from those facilities. Professor Rose's legal discussion of anti-trust law and his application of that law to the facts of this case are irrelevant to that determination. Although corporate norms evidence is relevant and admissible, a time-consuming side journey through the "anti-trust story" will complicate this already complex case and will not assist the trier of fact in understanding the

evidence or deciding a disputed issue of fact. Accordingly, the Court finds that Professor Roses' expert report and testimony are excluded from the Phase One trial.

### D. Professor Einer Elhauge

Professor Elhauge is a professor of antitrust and corporate law at Harvard Law School. (document # 1573, Exh. 1. hereinafter "Elhauge Report") He was retained to "analyze the implications of the Department of Justice Antitrust Divisions' investigatory conclusions and other facts in this case might have for whether Anaconda has direct liability for operating the facility in question in this litigation." (*Id.* at 3) Dr. Elhauge opines that under *Bestfoods* and corporate norms established under antitrust law: (1) Anaconda and Inspiration jointly operated Inspiration's facilities; (2) Anaconda agents meddled in Inspiration operations; and (3) dual agents operated Inspiration's facilities on Anaconda's behalf. (*Id.* at 21–26)

Atlantic Richfield argues that Dr. Elhauge's opinions are improper legal opinions because they are based upon his interpretation of *Bestfoods* and the application of that interpretation to the facts of this case. The Court agrees that to the extent that Dr. Elhauge interprets *Bestfoods*, his opinion invades the province of the trial court and is inadmissible. However, Dr. Elhauge's also offers admissible opinion testimony regarding corporate norms and whether the acts of Anaconda and Inspiration fit within those norms. Such testimony will assist the trier of fact in understanding the facts in this case. However, Dr. Elhauge also opines on anti-trust law (Elhauge Report at 18 –21) which is not relevant to the issues to be tried during the Phase One trial.

■ The Court concludes that Dr. Elhauge is precluded from offering his opinion regarding the law that governs this case and federal anti-trust law. However, he is permitted to opine on the relevant corporate norms and the relationship between Anaconda and Inspiration in view of those corporate norms. Cumulative and repetitive opinion testimony on this issue, however, may be precluded by the trial judge from introduction in evidence at time of trial. Fed.R.Evid. 403, *Blue Cross and Blue Shield v. Philip Morris, Inc.,* 2000 WL 1880283, *4 (E.D.N.Y.2000)(expert opinion precluded from evidence due to its cumulative and repetitive nature.).

## II. Mining Engineer Expert

PDMI/Inspiration also seeks to offer the testimony of a mining engineer, Dr. Donald Gentry, at the Phase One trial. Dr. Gentry plans to testify that Anaconda "controlled" Inspiration. (document # 1573, Exh. E, hereinafter "Gentry Report") Atlantic Richfield argues that Dr. Gentry's opinion is not admissible because the court has already ruled that, under *Bestfoods*, Atlantic Richfield cannot be liable based upon Anaconda's alleged "control" of Inspiration. Atlantic Richfield further argues that Dr. Gentry's opinion does not address the remaining issues for trial—whether Anaconda's sole agents operated Inspiration's facilities or arranged for the disposal of waste from those facilities. PDMI/Inspiration assert that Atlantic Richfield defines control too narrowly for purposes of determining operator liability.

■ Review of Dr. Gentry's opinion reveals that he offers opinions regarding the involvement of Anaconda's agents in pollution-causing activities at the mine that are relevant to the determination of operator and arranger liability. Dr. Gentry's testimony is based on his personal experience as an Anaconda employee and his forty years of experience in the mining industry. Dr. Gentry will discuss the normal conduct within the copper industry and will discuss

the conduct of Anaconda and Inspiration against that back drop. (Gentry Report at 5) Dr. Gentry's testimony may assist the trier of fact in assessing the totality of the circumstances. The Court, therefore, will deny the motion in limine as to Dr. Gentry's testimony and expert report.[2]

### III. Dr. Quivik

PDMI/Inspiration also offer the testimony of Dr. Fredric L. Quivik, a consulting historian of technology. (Notebook, Exh. F at iii, hereinafter "Quivik Report") Atlantic Richfield opposes this testimony on the ground that Dr. Quivik's testimony lacks an adequate basis in special knowledge or expertise. Atlantic Richfield also contends that this proffered testimony is not relevant to the remaining direct liability arranger claim.

As to Atlantic Richfield's first argument, the Court finds that an evidentiary hearing in accordance with *Daubert*[3] is necessary to determine whether Dr. Quivik qualifies as an expert and that his testimony is reliable. *Elsayed Mukhtar v. California State University, Hayward*, 299 F.3d 1053, 1064 (9th Cir.2002)("trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability."). The Court will schedule a *Daubert* hearing at a later date.

Atlantic Richfield also challenges the relevance of Dr. Quivik's testimony to the remaining issue for trial. The Court disagrees with this challenge and finds that

Dr. Quivik's testimony is relevant and should not be excluded in advance of trial. Dr. Quivik's report discusses Anaconda's involvement in the following activities at the Inspiration facility: (1) geology—the siting of plants and waste disposal at the Inspiration facility (Quivik report at 49–54); (2) engineering—the design of plants and waste disposal sites at the Inspiration facility; (*Id.* at 62–64); metallurgy—the processes to be applied at the Inspiration facility (*Id.* at 66–67); exploration and mine planning—where and how to mine at the Inspiration facility. (*Id.* at 53, 77–80); purchasing—what supplies to use and purchase for the Inspiration facility (*Id.* at 47–49); and transportation—how to get necessary supplies to the Inspiration facility (*Id.* at 95). The operator analysis set forth in *Best Foods* allows the consideration of evidence of Anaconda's involvement in activities such as the foregoing in determining operator liability. See, *Bestfoods,* 524 U.S. at 71, 118 S.Ct. 1876. Accordingly, the Court finds that Dr. Quivik's proposed testimony is relevant.

In accordance with the foregoing,

**IT IS ORDERED** that the Motion *in Limine* and Renewed Motion to Strike of Defendant Atlantic Richfield Company (document # 1573–1, # 1573–2) is **GRANTED** in part and **DENIED** in part as set forth below.

**IT IS FURTHER ORDERED** that the expert reports and testimony of Orlando

---

**2.** Written reports may be inadmissible on other grounds, e.g., hearsay. *Paddack v. Christensen, Inc.,* 745 F.2d 1254, 1257 (9th Cir.1984)(District court's conclusion affirmed that audit reports were inadmissible to prove the existence of the contribution deficiencies.); *Engebretsen v. Fairchild Aircraft Corp.,* 21 F.3d 721, 728 (6th Cir.1994)("District Court's conclusion that Rules 702 and 703 permit the admission of the [expert's written] reports was erroneous.")

**3.** See, *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 148, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999)(Supreme Court explained that the district court must "apply [its] gatekeeping role ... to all forms of expert testimony, not just scientific testimony.").

Delogu and Jonathan Rose are not admissible at the Phase I trial.

**IT IS FURTHER ORDERED** that Plaintiffs are precluded from offering either the expert report or testimony of Jeffery Haas and Einer Elhauge regarding the law which governs this case, including the *Bestfoods* opinion, or anti-trust law and the application of such law to the facts of this litigation.