**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 11 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

# UNITED STATES COURT OF APPEALS
# TENTH CIRCUIT

---

RAYTHEON CONSTRUCTORS INC.,
a Delaware corporation,

      Plaintiff-Appellant/
Cross-Appellee,

v.

ASARCO INCORPORATED, a New
Jersey corporation,

      Defendant-Appellee/
Cross-Appellant.

Nos. 00-1500 & 00-1530

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. No. 96-N-2072)**

---

Robert B. McKinstry, Jr. (Marc Davies, of Ballard Spahr Andrews & Ingersoll, LLP, Philadelphia, Pennsylvania, and Roger P. Thomasch and Denise S. Maes, of Ballard Spahr Andrews & Ingersoll, LLP, Denver, Colorado, with him on the briefs), of Ballard Spahr Andrews & Ingersoll LLP, Philadelphia, Pennsylvania, for Plaintiff-Appellant/Cross-Appellee.

Michael R. Thorp (Marcy G. Glenn and Tiffany W. Smink, of Holland & Hart, Denver, Colorado, and Peter J. Nickles and Gerald N. Magliocca, of Covington & Burling, Washington, D.C., with him on the briefs), of Heller, Ehrman, White & McAuliffe, Seattle, Washington, for Defendant-Appellee/Cross-Appellant.

---

Before **TACHA**, Chief Judge, **ALDISERT**[*], and **SEYMOUR**, Circuit Judges.

_____

**SEYMOUR**, Circuit Judge.

_____

Raytheon Constructors, Inc. ("Raytheon") appeals the decision of the district court holding it liable to ASARCO Corporation ("ASARCO") as an "operator" and an "arranger" under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601 _et seq._, in relation to the environmental cleanup at the Rawley Mine site in Saguache County, Colorado. ASARCO cross-appeals regarding damages. We reverse as to Raytheon's liability and therefore need not reach the cross-appeal regarding damages.

**I.**

The mine at issue in this case was owned by the Colorado Corporation when, in 1925, it encountered financial difficulties and defaulted on several debts, including those owed to Stearns-Roger (the predecessor in interest to Raytheon), ASARCO, and Metals Exploration Company. Those three entities together created Rawley Mine, Inc. ("RMI") as a part of a reorganization plan to recover

_____

[*] Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

the outstanding debts. They invested the necessary funds in RMI in different proportions (ASARCO at forty percent, Metals Exploration at forty percent, and Stearns-Roger at twenty percent), and each received stock corresponding to their liens against Colorado Corporation. At the initial meeting of the board of directors of RMI, Mr. Stearns, the president of Stearns-Roger, was elected chairman and president of RMI. In 1929, after RMI had repaid Stearns-Roger's loans, ASARCO purchased all of Stearns-Rogers' RMI stock and Mr. Stearns resigned as RMI's president and executive committee chairman. This ended Stearns-Roger's association with RMI. We note in reciting these facts that the role played by Stearns-Roger, which never owned more than twenty percent of RMI, is best characterized as that of minority shareholder rather than "parent" company.

In 1996, Raytheon sought a declaratory judgment that it was not liable to ASARCO under CERCLA for the costs ASARCO incurred through cleanup in connection with the Rawley Mine site. ASARCO counterclaimed, arguing Raytheon was liable under CERCLA and state common law as Stearns-Rogers' successor in interest. The parties filed cross-motions for partial summary judgment. The district court denied ASARCO's motion. The court granted Raytheon's motion on the issue of "owner" liability, but denied its motion on the issues of "operator" or "arranger" liability. The court then bifurcated the issues

of liability and damages, and after a bench trial held Raytheon liable for CERCLA contribution as an operator and an arranger.

Prior to the damages portion of the trial, Raytheon moved for reconsideration of the liability decision based on a new Supreme Court opinion, *United States v. Bestfoods*, 524 U.S. 51 (1998). The district court treated that motion as one pursuant to FED.R.CIV.P. 60(b), even though it acknowledged that Raytheon was seeking reconsideration of an interlocutory order rather than a final judgment. After considering *Bestfoods*, the court denied Raytheon's motion in a second order. It subsequently held Raytheon responsible to ASARCO for a portion of ASARCO's "recoverable costs." *See* 42 U.S.C. § 9607(a); 40 C.F.R. § 300.700.

## II.

On appeal, Raytheon argues the district court misapplied *Bestfoods* in making its "operator" liability determination. Raytheon contends the underlying reasons for reversal of "operator" liability also support reversal of the "arranger" liability determination. In analyzing the district court's opinion, we must first determine our standard of review.

The district court was incorrect to treat Raytheon's motion for reconsideration under Rule 60(b), which only applies to final orders or judgments.

Instead, "any order . . . however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED.R.CIV.P. 54(b). Thus we will not review the district court's order for abuse of discretion, as we would a ruling on a Rule 60(b) motion. Rather, we review de novo the district court's conclusions of law in its reconsideration of its order on liability. *See, e.g.*, *Elder v. Holloway*, 510 U.S. 510, 516 (1994).

The central issue in this appeal is whether Raytheon may be held liable for the actions of RMI under section 107(a) of CERCLA, 42 U.S.C. § 9607(a). Section 107(a) lists four classes of liable parties: (1) owners and operators of hazardous substance sites; (2) persons who owned or operated such sites at the time of disposal; (3) persons who have arranged for the disposal of hazardous substances; and (4) persons who have transported hazardous substances for disposal. *See Florida Power & Light Co. v. Allis Chalmers Corp.*, 893 F.2d 1313, 1317 (11th Cir. 1990). RMI itself is liable as an owner, an operator, and an arranger. Raytheon, as successor in interest to Stearns-Roger, may only be held liable if it can be determined that the operation and arrangement functions of RMI may be attributed directly to Stearns-Roger as a stockholder.

In *Bestfoods*, the Supreme Court clarified the standard to be used in making

this determination. First, it "sharpen[ed] the definition [of "operator"] for purposes of CERCLA's concern with environmental contamination." *Bestfoods*, 524 U.S. at 66. The Court stated "an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations." *Id*. at 66-67. Furthermore, the Court emphasized the necessary connection between the potential "operator" and the facility itself, rather than with the subsidiary per se: "The question is not whether the parent operates the subsidiary, but rather whether it operates the facility, and that operation is evidenced by participation in the activities of the facility, not the subsidiary." *Id.* at 68 (quotation omitted). Because the Court in *Bestfoods* was addressing a situation involving a parent and subsidiary, we must accordingly modify our inquiry as appropriate to suit the situation of a minority shareholder such as Stearns-Roger. The focus on the facility remains the crucial consideration.

The Court acknowledged the possibility that directors and officers might hold positions with both a parent and a subsidiary, and recited the corporate law principle that it is entirely appropriate for them to do so. *Id.* at 69. Such dual officers can and do "change hats" to represent the two corporations separately. *Id.* (quotation omitted). Again citing basic principles of corporate law, the Court

noted the presumption that directors wear their "subsidiary hats" rather than their "parent hats" when they act for the subsidiary, and concluded that

> it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility.  The Government would have to show that, despite the general presumption to the contrary, the officers and directors were acting in their capacities as [parent] officers and directors, and not as [subsidiary] officers and directors when they committed those acts.

*Id.* at 69-70.[1]

Raytheon does not contend the factual findings of the district court are clearly erroneous; indeed, the findings of fact were stipulated by the parties. Based on those facts, we are persuaded the district court erred in its application of *Bestfoods*.  The district court correctly cited the relevant points we have listed from *Bestfoods*, but then reasoned as follows:

> Although my Findings and Conclusions rest, in part, on evidence that Stearns-Roger . . had a significant stake in [RMI] in terms of stock,

---

[1] To the extent that the district court considered the actions of Mr. Gordon, who wore only a Stearns-Roger hat, we point out that the Supreme Court in *Bestfoods* also addressed the separate possibility that an agent of the parent with no subsidiary hat to wear might manage or direct activities at the facility.  On this point, the Court stated that activities that "involve the facility but which are consistent with the parent's investor status . . . should not give rise to direct liability." *Id.* at 72.  Thus, the Court directed lower courts considering these issues to determine "whether . . . actions directed to the facility by an agent of the parent alone are eccentric under accepted norms of parental oversight of a subsidiary's facility." *Id.*  On the record here, the actions of Mr. Gordon are wholly consistent with investor status, particularly given Stearns-Rogers' position as a minority shareholder.

capital, and voting power, such evidence is not necessary to a finding that Stearns-Roger (and, therefore, Raytheon) was directly liable for the operations of RMI's facility, the Rawley Mine. Moreover, contrary to Raytheon's assertions, it is clear that Mr. Thomas Stearns, president of Stearns-Roger and president and chairman of RMI, acted on behalf of Stearns-Roger, not simply as an RMI board member. As I stated in my Findings and Conclusions, Stearns himself, as sole stockholder and president of Stearns-Roger, served in a representative capacity as the primary liaison between the two entities.

Aplt. Appx. at 100 (quotation and citation omitted). We note, however, that serving as the primary liaison between two corporations does not rebut the presumption of wearing separate hats in separate corporate roles. Mr. Stearns' role as president of Stearns-Roger does not lead to the conclusion reached by the district court – i.e., that he acted on behalf of Stearns-Roger rather than RMI. Indeed, none of these facts rebut the *Bestfoods* presumption.

The district court continued:

Of course, Mr. Stearns's personal involvement in the purchase of land to collect Rawley Mine tailings most pointedly illustrates Stearns-Roger's direction of environmental decision-making at RMI. While this evidence serves as the basis of Raytheon's liability as both an arranger and an operator, it is not the only reason for finding Raytheon liable as an operator of RMI. As I held earlier, Mr. Stearns was far more than a figurehead, and Stearns-Roger, along with ASARCO and Metals Exploration, ran RMI.

*Id.* (quotation and citation omitted). Again, the district court misinterpreted *Bestfoods*. There is no evidence to rebut the presumption that Mr. Stearns' involvement in the purchase of land for RMI was undertaken in any capacity other

-8-

than as president of RMI and a member of its board.  As such, his involvement in the purchase cannot serve as the basis for operator or arranger liability of Stearns-Rogers.

Other evidence listed by the district court in support of its legal conclusion included the fact that Mr. Stearns wrote a letter to RMI stockholders regarding financial and operating conditions of the company, that he negotiated for RMI an ore smelting contract with ASARCO, that he submitted board licenses and agreements with a mineral separation company and had unanimous approval to sign those documents, that he submitted to the board a contract for electrical power supply to the mines and had approval to sign that contract, that he signed an installation order and a chattel mortgage for new transformers, that he had board approval to execute demand notes for cash advances, and that as a member of the board, he helped supervise and replace the on-site manager.  *Id.* at 100-01. The critical point, however, is that nothing indicates Mr. Stearns undertook any of these actions while wearing any hat other than his RMI president hat.  The crucial consideration here is not what Mr. Stearns did, but what Stearns-Roger did.  As long as Mr. Stearns acted as an executive and board member of RMI, *Bestfoods* tell us that his actions cannot be attributed to Stearns-Roger.  While the district court believed that Mr. Stearns himself was an operator of RMI's facilities, *id.* at 101, that does not suffice to make Stearns-Roger, as a minority shareholder, an

operator. The suit here is against the company, not Mr. Stearns personally. We hold that as a matter of law, this evidence is insufficient to support the district court's conclusions.

In its original Findings of Fact and Conclusions of Law, although the district court recognized that the need to resolve the "arranger" issue was obviated by the determination that Stearns-Roger was an "operator," the court nevertheless addressed the issue as an alternative basis for liability. In so doing, the court concluded that Raytheon was liable as an arranger because Stearns-Roger "actually arranged for the disposal of RMI mine tailings at the lower tailings area." *Id.* at 89. Here the court relied upon evidence that "in his capacity as an RMI board member, [Stearns] directed the purchase of property with the knowledge and intent that it serve as a disposal site for the mine tailings." *Id.*

To be held liable under CERCLA as an arranger, a party must satisfy three requirements. First, the party must be a "person" as defined in CERCLA. Second, the party must "own" or "possess" the hazardous substance at issue. Third, the party must, by contract, agreement or otherwise, arrange for the transport or disposal of such hazardous substances. *See* 42 U.S.C. § 9607(a)(3). As to the questions of ownership or possession, the district court found that Stearns-Roger's twenty percent stockholder ownership interest along with its "now-established operator status" created a "nexus" between Stearns-Roger and

the disposal of the hazardous substance.  Aplt. Appx. at 88 (citing *Transportation Leasing Co. v. State of Cal. (CalTrans)*, 861 F. Supp. 931, 941 (C.D. Cal. 1993), and *Gen. Elec. Co. v. AAMCO Transmissions, Inc.*, 962 F.2d 281, 286 (2d Cir. 1992)).  The court further noted that under *Transportation Leasing*, constructive ownership or possession may be demonstrated by a party's selection of a site for disposal.  Because Mr. Stearns was involved in this type of decision-making for RMI, the district court found he satisfied the requirement.

Once again, the district court made the mistake of automatically attributing Mr. Stearns' action to his role with Stearns-Roger and not to his role with RMI. The *Bestfoods* holding regarding operator liability also logically applies to cases involving arranger liability.  *See Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 846 (6th Cir. 1999).  Because the district court relied on its erroneous conclusion regarding operator liability, it also erred in reaching its conclusion on arranger liability.

Finally, in its second order, citing *Bestfoods*, the district court stated:

> Thus, for example, in arranging for the supply of electrical power to RMI's Bonanza mines or negotiating a detailed contract for the smelting of raw materials from all of RMI's mines, Mr. Stearns -- and, by extension, Stearns-Roger -- helped the mines to function. Inasmuch as the functioning of these facilities produced hazardous waste which leaked or was improperly disposed of, Stearns-Roger "manag[ed], direct[ed], or conduct[ed] operations specifically related to pollution."

Aplt. Appx. at 101 (citation omitted).  This reasoning is fatally flawed by the

-11-

district court's unsupported assumption that Mr. Stearns' actions may be considered, by extension, to be those of Stearns-Roger. To the contrary, we are required by *Bestfoods* to presume that Mr. Stearns' actions in "helping the mines to function" were taken in the ordinary course of his role as RMI president. The facts do not support a rebuttal of that presumption. This error goes to the analysis of both operator and arranger liability. As the Court stated in *Bestfoods*, "it cannot be enough to establish liability here that dual officers and directors made policy decisions and supervised activities at the facility." *Bestfoods*, 524 U.S. at 69-70.

In sum, the correct analysis results in a conclusion that Raytheon, as successor in interest to Stearns-Roger, may not be held liable either as an operator or as an arranger in connection with the environmental cleanup at issue in this case. This determination renders moot the cross-appeal on the issue of damages.

Accordingly, we **REVERSE** the decision of the district court.